WILLIAM GILE v. JOHN A. STEGNER and Others.[1]

June 24, 1904.

Nos. 13,894—(165).

**Injunction.**

Injunction will lie to prevent unauthorized action by the county auditor and county commissioners on a petition for a change of a county seat.

**Change of County Seat.**

The limitation fixed by chapter 111, p. 115, Laws 1899, to the effect that, where a special election on the question of a change of a county seat has been held, no steps shall be taken to secure a resubmission of the question for five years thereafter, has no application to a case where, by reason of a failure to comply with the law, the election is a nullity.

**Same—Submission to Electors.**

Where for any reason a meeting of the board of county commissioners to consider a petition for a change of a county seat is illegal, and their action on the petition and the election based thereon are a nullity, the county auditor may legally, within a reasonable time after such election has been adjudged to be void, call a meeting of the board to consider the petition; and they may lawfully meet, consider the petition, and certify the result of their action to the county auditor, to the end that he may call another election if the petition complies with the statute.

Appeal by defendants, constituting the board of county commissioners of Lincoln county, from an order of the district court for said county, Webber, J., denying a motion to dissolve a temporary writ of injunction.   Reversed.

*John T. P. Power, A. H. Mohler, R. F. Schulz, V. B. Seward* and *A. E. Clark,* for appellants.

*Somerville & Olsen,* for respondent.

START, C. J.

This action was brought to perpetually enjoin the defendants from taking any official action upon a petition on file with the county auditor praying for the removal of the county seat of the county of Lincoln from the village of Lake Benton to the village of Ivanhoe.   A

[1] Reported in 100 N. W. 101.

temporary injunction was issued so enjoining the defendants, and they appealed from an order denying their motion to dissolve it.

There is practically no dispute as to the facts relevant to such motion. They are substantially these: A petition for such removal, signed by more than sixty per cent. of the legal voters of the county, was duly filed in the office of the county auditor September 9, 1901. Such proceedings were had that the board of county commissioners met and considered the petition September 28, 1901, and such proceedings were had and taken by the board that the county auditor, in form, called a special election to be held on October 28, 1901, for the purpose of enabling the electors of the county to vote on the question of so changing the county seat. Such election was, in form, held on the day named, and more than the required number of votes were cast and canvassed for the removal of the county seat to the village of Ivanhoe. The validity of the election was contested, and in due course of procedure the cause reached this court on appeal from the judgment of the district court of the county of Lincoln adjudging that the election was legal, and the county seat changed accordingly. The judgment was reversed by this court, and the election held void, for the reason that the board had no jurisdiction to consider or act upon the petition, in that no sufficient proof of posting of notice of the special meeting of the board to act upon the petition was made and filed with the auditor prior to such meeting. Tucker v. Board of Commrs. of Lincoln Co., 90 Minn. 406, 97 N. W. 103. The cause was remanded to the district court, with directions to amend its findings of fact and conclusions of law so as to provide for the entry of judgment to the effect that such election was void. Judgment was so entered in the district court December 10, 1903.

Four days after, a demand signed by five of the petitioners for the removal was served on the county auditor, requiring him to make, file, and serve notice of calling a meeting of the board of county commissioners to consider the petition for removal. The county auditor complied with such demand, and the board met on January 2, 1904, to consider the petition. While the board were so in session this action was commenced by a taxpayer and legal voter of the county, and the temporary injunction issued. The defendants answered, and the plaintiff replied. The defendants then made a motion to dissolve

the injunction. The appeal in this case is from an order denying the motion.

1. The defendants' first contention is that the complaint does not allege facts entitling the plaintiff to equitable relief by injunction, for the reason that if the board of county commissioners and county auditor, without authority of law, take measures to call a special election, and one is held, there is an adequate remedy at law, by contesting the election. Clearly the suggested remedy is inadequate. If the county officers are proceeding to call and hold a moot election on the question of changing the county seat, private and public interests and morals require that the officers be enjoined from proceeding. A contest of the election after it has been held, and result declared, affords no remedy, except to secure a judicial decision that the election was void. The injury to taxpayers and to public interests by such an election cannot be remedied by an election contest. An injunction is a proper and adequate remedy in such a case. Streissguth v. Geib, 67 Minn. 360, 69 N. W. 1097.

2. Chapter 111, p. 115, Laws 1899, provides, in effect, that, where a special election for the change of the county seat of a county has been held, no steps shall be taken to secure the resubmission of the question "until after the expiration of a period of five years from the date of such special election." It is the claim of plaintiff's counsel that this limitation applies to an invalid election as well as to a valid one, because the evils to be guarded against by the limitation are as great in the one case as in the other, and that for this reason, if for no other, the motion to dissolve the injunction was properly denied. The language of the statute, however, is that

> Where a special election has been held under this act for the change of the county seat, * * * no such petition shall be circulated, signed, presented or filed until after the expiration of a period of five years from the date of such special election.

It is quite obvious that this limitation has sole reference to elections held "under this act"; that is, to elections as to which the jurisdictional provisions of the act have been so far complied with that the election is not a nullity. If it had been the intention of the legislature to include within the purview of the limitation attempted elections which

were absolute nullities, it is to be presumed that it would have said so. We are not at liberty to construe the statute as if it read "where an election has been held or attempted to be held, under this act." We therefore hold that the five-years limitation has no application to an election on the question of the change of a county seat, which is, by reason of noncompliance with the jurisdictional provisions of the law, a nullity. McKinney v. County, 26 Fla. 267, 4 South. 855. It follows that the fact that five years have not expired since the attempted election in this case affords no reason why steps may not now be taken to have the question of the removal of the county seat submitted at a special election.

3. This brings us to the important question presented by the record in this case, namely, can the petition for such removal filed September 9, 1901, be now made the basis for calling and holding a special election on the question of the removal of the county seat? The plaintiff insists that the question must be answered in the negative, for the reason that the petition is stale, having already served its purpose, and that it is now too late to take any action thereupon. It is clear that there has been no abandonment by the petitioners of the proceeding looking to the removal of the county seat, because, four days after the final judgment adjudging the election to be void, steps were taken to secure a hearing on the petition. Nor is the petition stale in the sense that no action under it has been taken or attempted for more than two years after it was filed, for promptly, in good faith, and in supposed compliance with the law, action was taken upon the petition, and renewed action taken as soon as it was judicially determined that the first action was a nullity. This is not a case where the petition was permitted to lie dormant, with no attempt to act upon it. If such were the case, we are not prepared to say that it would not be an abandonment of the petition, for, if the county officers neglected or refused to take action on the petition within the time prescribed by the statute, the petitioners could compel such action by mandamus.

The question, then, is whether, by reason of the delay for which the petitioners are in no manner responsible, the board of county commissioners have lost jurisdiction to meet, and consider the petition, and certify the result of their action to the county auditor, to the end that he may call the special election. It is true, as counsel for plaintiff

suggest, that the statute indicates that prompt action upon the petition is required. The petition must be signed by legal voters of the county to the number of at least sixty per cent. of the whole number voting in the county at the general election next preceding the filing of the petition with the county auditor, accompanied by the affidavit of at least two of the signers of the petition that the signatures thereto are genuine, and were affixed to the petition within sixty days next before the date of the affidavit. The county auditor must file .the petition, if on its face it complies with the statute, and call a special meeting of the board of county commissioners to act upon it, fixing the time of such meeting not less than fifteen nor more than twenty days after the time of the presentation of the petition to him. It is the duty of the board to meet at the time named in the call, consider the petition, and to conclude their duties within ten days after the date of their first meeting, and immediately thereupon file their certificate of the result of their action with the county auditor. It is his duty, upon such certificate being filed in his office, if it shows that the petition was signed by the necessary number of legal voters, to make his order fixing the time of holding a special election upon the question, which shall not be less than twenty nor more than thirty days after the certificate is filed. G. S. 1894, §§ 647–649.

It is to be noted that all of the proceedings in this case were in compliance with the provisions of the statute, up to and including the filing of the petition with the auditor, and that the sole defect in any of the proceedings was the failure to file with the auditor, before the meeting of the board, proper proof of the fact that duplicate notices of such meeting had been posted and published as required by law. The board concluded their inquiries as. to the petition, and filed their certificate with the county auditor, and the special election was called by him, and the time for holding it fixed, all within the time directed by the statute. The answer, then, to the question under consideration, depends upon whether the direction of the statute that the board shall meet not more than twenty days after the filing of the petition, to act upon it, is so far mandatory that if, for any cause, they fail to hold such meeting within the time limited, they are without jurisdiction to consider the petition at a meeting called for such purpose after the expiration of the twenty days. This is clearly so, for, if the board may now meet

to consider the petition, all the subsequent acts and proceedings required by the statute may be done and had within the time fixed by the statute. It is the duty of the auditor and the board to comply with the provisions of the statute as to the petition within the time directed by it. But if they refuse or fail, for any cause, so to do, what is the effect? Have they no power to comply with the statute after the prescribed time? If not, then hostile or negligent or incompetent public officials have the power to prevent the holding of any valid election so long as they remain in office, because, until the expiration of the time within which the officials are to discharge the duties imposed upon them with reference to the petition, they are not in default, and no proceedings can be taken against them in the courts during that time. But if, after the expiration of the time limited, they have no power to discharge such duties, the courts cannot then compel them to do so. Courts have no jurisdiction to compel public officers to do that which they have no legal right to do. Any construction of the statute which would enable dishonest or incompetent officers to prevent a consideration of a petition for the removal of a county seat ought not to be accepted unless such is the manifest meaning of the language used by the legislature.

It may be conceded that the time limit within which the election must be held is so far mandatory that an election not held within the time limited for holding it would be void. See State v. County, 6 Nev. 104, and Gossard v. Vaught, 10 Kan. 162. We are, however, of the opinion that, while the other time limitations prescribed by the statute are intended to speed the proceedings on the petition, yet they are not so far mandatory that if, for any reason, the board of county commissioners fail to hold a legal meeting to consider the petition within the time named in the statute, the county auditor may not within a reasonable time thereafter call a special meeting of the board to consider the petition. There can be no fair question in this case that the county auditor did not, within a reasonable time after it was finally adjudged that the first meeting of the board was void, call a second meeting of the board for the purpose of considering the petition. We accordingly hold that he might legally call such meeting of the county commissioners, and that they had jurisdiction to meet, consider the petition, and certify the result to the county auditor. State v. Geib, 66 Minn. 266, 68 N. W. 1081.

It is urged that the case cited is not in point, for the reason that the commissioners were directed to reconvene, and reconsider the petition, and correct an error of law only. The case cited was a county seat removal case. The petition was filed December 31, 1895. The board met to consider the petition January 20, 1896, and illegally struck therefrom the names of one hundred forty four petitioners, which reduced the number of legal petitioners below the legal minimum, and on January 29 they made and filed their certificate with the county auditor. Thereupon an alternative writ of mandamus was sued out, and a hearing had thereon February 28, and on March 21 judgment was entered in the district court that a peremptory writ issue, commanding the board to reconvene within fifteen days and revoke their action in striking the names from the petition, and to file a new certificate with the county auditor, and further commanding him, on receiving it, to call a special election. The defendants appealed from the judgment to this court. This court affirmed the judgment, and the case was remanded December 2, 1896. The case, then, is directly in point, for, if the board had no power to act on the petition and make the certificate after the time fixed in the statute, the court could not have compelled them to meet nearly a year after the filing of the petition and take any action in reference to the petition. See Streissguth v. Geib, 67 Minn. 360, 69 N. W. 1097. It is true, as counsel claims, that the denial of a motion to dissolve a temporary injunction is ordinarily a matter within the discretion of the trial court; but where, as in this case, the facts are substantially admitted, the question is largely one of law.

It is suggested in the plaintiff's brief that the allegation of the answer to the effect that the election was invalid for failure to make proof of the posting of the notice of the special meeting of the county commissioners to consider the petition is put in issue by the reply. The allegation appears to be true, by the decision of this court holding the election void. It also fairly appears from the record in this case that the allegation is true.

It follows that the order appealed from must be reversed, and the cause remanded to the district court, with directions to grant the defendants' motion to dissolve the temporary injunction. So ordered.