HERMAN JURRIES v. CHRISTIAN VIRGENS and Others.[1]

April 24, 1908.

Nos. 15,464—(15).[2]

**Public Ditch.**

A radical departure by the engineer and county commissioners from the line of a public ditch as demanded by the petition may render the order of the commissioners laying out the ditch and all subsequent proceedings entirely void.

**Same—Change of Terminus.**

Where a petition, under the provisions of section 3, c. 258, Laws 1901, as amended, calls for the laying out of a public ditch, and designates the source and a proper outlet, the engineer and county commissioners have no authority to abandon the terminus as petitioned, and establish the same upon the land of a private owner.

**Injunction by Landowner.**

In laying out a public ditch, the county commissioners abandoned the terminus designated in the petition as an outlet, and located the same upon the premises of a private owner, upon the supposition that such owner would construct and maintain a sufficient outlet. Contracts were let for the construction of the ditch so modified. *Held*, the owner whose lands were damaged by reason of the fact that the outlet was insufficient to carry off the waters was not estopped from enjoining the contractors from constructing and maintaining the ditch as ordered, even though he voluntarily constructed across his own land that part of the ditch so abandoned.

Action in the district court for Martin county to restrain defendants from deepening, widening or extending a certain ditch and from main-

---

[1] Reported in 116 N. W. 109.          [2] April, 1908, term calendar.

taining that ditch. The case was tried before Quinn, J., who ordered judgment in favor of defendants. From an order overruling plaintiff's alternative motion that the conclusions of law be amended or for a new trial, plaintiff appealed. Reversed and new trial granted.

*Albert R. Allen,* for appellant.

*Dean & Palmer,* for respondents.

LEWIS, J.

Appellant was the owner of the southeast ¼ of section 8, township 103, range 31, Martin county, and commenced this action to restrain respondents, owners of certain land in sections 17 and 20 in the same township, from constructing and maintaining a certain ditch, and from causing the same to discharge water upon appellant's premises. Respondents answered, and justified their action as contractors under an order of the county commissioners, which established a public ditch over the locality, pursuant to a petition for that purpose. The trial court found that the petition for the ditch was duly issued, and described the line of the ditch as commencing in section 20 running northerly through sections 8 and 17, and terminating at Elm creek, in section 9; that all proceedings of the commissioners up to the time of the appointment of the engineer were regular; that the engineer filed a report of his survey on January 6, 1905, from which it appeared that he did not make a survey of the entire line of the proposed ditch, but ended at a point on appellant's land about a mile short of the proposed outlet at Elm creek; that the notice of hearing upon the petition followed the engineer's report, but in other respects was in accordance with the law; that the commissioners met in pursuance of the notice and established the line of the ditch in accordance with the engineer's report; and that the contract for the construction thereof was let to respondents Virgens and Montgomery. Among other things, the court found that, about the time of the filing of the petition, respondents Virgens and Montgomery had a conversation with appellant, and that appellant informed them he would offer no objections to the construction of the proposed ditch if they would permit him to do the work of constructing the same upon his own land, and the court found that appellant thereupon constructed a ditch across part of his own land in the southeast ¼ of section 8, substantially upon the line of the pro-

posed ditch as described in the petition, and that such ditch, with a proper outlet, was of sufficient capacity to carry off the surface waters intended to be drained by the proposed ditch. The court further found as follows: "For some unexplained reason the engineer located the terminal of his ditch at the south end of the plaintiff's ditch, without providing for any outlet or escape for the water to the north of the plaintiff's land into Elm creek, as was so clearly provided for in the petition, which fact of itself defeats the public utility of the entire enterprise." The court also found that the surface of the ground at the natural outlet to the north of the north end of appellant's ditch was about two feet above the bottom of appellant's ditch, and that the distance from the north end of appellant's ditch to Elm creek was about eighty rods, and that the expense of constructing the proper outlet for all of the waters coming through the proposed ditch would not be great. Judgment was ordered for respondents, upon the ground that appellant had mistaken his remedy.

Although the court did not expressly find that appellant was damaged by the acts of respondents, that fact sufficiently appears from the evidence and findings. The outlet between appellant's land and Elm creek did not possess sufficient fall, and the waters were held back, causing appellant's ditch to fill in part with silt, thus flooding his land. As the work of constructing the ditch progressed, the waters causing this injury were released from certain sloughs located on the petitioner's lands in sections 17 and 20. Respondents justify their action in constructing and maintaining the ditch under the petition and order of the county commissioners, and the first question presented is: Were the proceedings in laying out the ditch in accordance with the statute?

Section 3, c. 258, p. 414, Laws 1901, as amended by chapter 38, p. 90, Laws 1902, prescribes, in part, the duties of the engineer as follows: "He shall make a correct survey of the line of said ditch, drain, creek or watercourse, from its source to its outlet." He is required to establish stakes or monuments, compute the number of cubic yards to be excavated, and estimate the actual cost. "In locating a public ditch, drain, creek or watercourse, the engineer may vary from the line described in the petition, or from the starting point thereof, as he deems best, provided he commence the ditch at or as near the point described in the petition as is reasonably practicable, * * * and provided,

further, that when there is not sufficient fall in the length of the route described in the petition to drain the land adjacent thereto, or when for other reasons it appears expedient, he may shorten or extend the ditch from the outlet named in the petition far enough to reasonably effectuate the purpose for which the work is extended."

It is the claim of respondents that, because appellant assumed to construct a ditch across part of his own land of sufficient capacity to carry off all water proposed to be discharged into it, the engineer was justified in establishing the north terminus of the public ditch at the south terminus of appellant's ditch. At the trial some evidence was received which respondents claim tended to show that appellant had agreed with the petitioners that, if they would permit him to construct that portion of the ditch across his own land, he would assume the duty of constructing a proper outlet between his own land and Elm creek, a distance of about eighty rods. Whatever may have been the agreement or understanding between the parties, the court found, as above stated, that appellant informed respondents he would offer no objections to the construction of the ditch, if they would permit him to do the work of constructing the same on his own land, and also that for some unexplained reason the engineer located the terminus of his ditch at the south end of appellant's ditch, without providing for any outlet or escape for the water to the north of appellant's land into Elm creek. It appears from the record that the engineer assumed that the outlet already existing was of sufficient capacity to carry off the waters from appellant's ditch, and that the public ditch could safely be terminated on appellant's land.

The drainage act was enacted for the purpose of enforcing the drainage of lands belonging to private persons for the benefit of the public, and includes the power of eminent domain. The object is to accomplish a public benefit by restoring wet lands to cultivation and relieve the possible effects of undrained lands upon the health of the community. The legislature took pains to provide not only for the construction of ditches of sufficient capacity, grade, and character to accomplish the immediate purpose, but also to maintain them in the future, in order that such benefit might become lasting and effective. The engineer is required to find the proper source, to determine a sufficient grade, and establish an adequate and permanent outlet. It was not the

intention to permit the county commissioners to use the machinery provided for the purpose of collecting and discharging such waters upon the lands of a private owner.

In this case the petition proposed to carry the outlet into a well-defined watercourse, where there would be no opportunity for the damage to occur which is charged in the complaint. If the petition had been followed, the ditch would have become a public ditch from beginning to end, and would have been maintained in the future by the public authorities. The provisions of the law above quoted were not intended to give an engineer license to depart so materially from the expressed purposes of the act and from the petition as was done in this case. This phase of the question was before the court in the case of Lager v. County of Sibley, 100 Minn. 85, 110 N. W. 355, and it was held that the engineer had no authority to extend the proposed ditch several miles beyond the terminus named in the petition, and that only reasonable departures could be made by the engineer from the termini named in the petition. It is our view that the act of the engineer in abandoning nearly a mile of the ditch, as petitioned for, and in establishing the north terminus on private property, depending upon the chance that a ditch or water way over private land might be adequate for the purpose or upon the promise of a private owner to open the outlet, was entirely unwarranted, and constituted a radical departure, and that the subsequent action of the county commissioners in laying out the ditch, and all subsequent proceedings, were void.

2. Assuming that appellant knew the county board had fixed the north terminus of the ditch at the place stated, it does not follow that he was prevented from appealing to a court of equity to enjoin the maintenance of the ditch, when subsequent events proved that it was so improperly constructed as to cause great damage to his land. Appellant, as well as the other interested parties, no doubt assumed that the outlet was sufficient; but the responsibility of laying out and constructing the ditch according to law did not rest upon appellant. The public ditch was not begun by the contractors until nearly two years after appellant had constructed his own ditch. Conceding that the engineer was led to believe that appellant would construct a proper outlet, and would maintain it and his own ditch in the future, such contract was invalid. The statute does not authorize any such proceedings.

The elements of estoppel are lacking in this case, and injunction was the proper remedy. Bilsborrow v. Pierce, 101 Minn. 271, 112 N. W. 274; Johnson v. Town of Clontarf, 98 Minn. 281, 108 N. W. 521; Miller v. Jensen, 102 Minn. 391, 113 N. W. 914; and Lager v. County of Sibley, supra. Under the doctrine of Gile v. Stegner, 92 Minn. 429, 100 N. W. 101, the county commissioners were not deprived of jurisdiction by reason of the mistake in departing from the petition. They still have jurisdiction to take up the matter, call for a proper survey, and complete the enterprise. Some embarrassment may be occasioned from the fact that the entire work has been largely completed; but, in view of the fact that the parties who did the work were the owners of the lands benefited, there should be little difficulty in properly adjusting the assessments. Considering the circumstances, we are of the opinion that a new trial should be granted, but that the trial court should continue the case for such reasonable time as may be necessary to enable the county commissioners to complete the proceedings as herein indicated.

Order reversed, and new trial granted.