## STATE ex rel. FRANK W. KOLARS v. COUNTY BOARD OF POLK COUNTY.[1]

February 3, 1922.

No. 22,523.

**Drain—use of word "repair" in statute.**
    1. Section 5552, G. S. 1913, as amended by chapter 300, Laws of 1915, uses the word "repair" in two senses. In the first paragraph, to indicate keeping the ditch in serviceable condition, and in the last paragraph, to include the widening and deepening of the ditch in consequence of its insufficient capacity as originally constructed.

**Repair of inadequate public ditch warrants an assessment.**
    2. An assessment can legally be made only for improvements, which are of general public benefit, but the repair of an inadequate public drainage system so as to render it of sufficient capacity to furnish adequate drainage of the lands sought to be drained, is as much a public benefit as was the original undertaking.

Upon the relation of Frank W. Kolars and another the district court for Polk county granted its writ of certiorari directed to the

[1] Reported in 186 N. W. 709.

County Board of Polk County to review the action of that board in the matter of constructing County Ditch No. 38 and repair thereof. From an order, Watts, J., affirming the order of the county board, relators appealed.  Affirmed.

*Charles C. Kolars* and *Martin O'Brien,* for appellants.

*James E. Montague,* for respondent.

QUINN, J.

In 1902 a petition in due form was filed asking for the establishment of a public drainage system in Polk county. The ditch was constructed and accepted in the year 1903 as County Ditch No. 38. It consisted of a line of open work about 10 miles in length, with a cut from 6 to 8 feet wide at the bottom and from 1.5 to 5.4 feet deep. It bordered upon a public highway its entire length and the spoil banks were used for road grading.

In 1920 a petition asking for the deepening, widening and repair of this ditch, signed by Carl Johnson and 10 other parties whose lands had been assessed for the construction of the system, together with a bond in the sum of $2,000, was filed and presented to the county board of Polk county.  On August 6 the county board met, considered the petition and appointed an engineer to ascertain and report the cost of such undertaking and such proceedings as he deemed necessary.  The engineer qualified, entered upon the discharge of his duties, and on September 15 filed his report in the office of the county auditor, reciting that he had made an accurate survey of County Ditch No. 38 from its source to its outlet, caused stakes to be set along its line numbered progressively down stream at each 100 feet, caused a plat of the survey to be made, giving a description of the proposed improvement and of the lands to be affected, together with a computation of the number of cubic yards of earth to be removed between each of the 100 foot stakes, the estimated cost of removing the same, of laying out, establishing and constructing the work necessary to complete the improvement, and giving the depth of the cut, its width at the top, at the bottom, source, outlet and at each 100 foot stake and the manner in which such work should be done.

On September 22 the county board met, considered the report of the engineer, determined that the ditch was in need of being widened, deepened and repaired as asked for in the petition and as set forth in the engineer's report, and thereupon made an order appointing three disinterested freeholders as viewers, who duly qualified and entered upon the discharge of their duties.

On October 29 the viewers filed their report with the county auditor, reciting that they had met at the time and place specified in the order of the county auditor and proceeded to view and examine the ditch and proposed improvement from its source to its outlet, together with the branches thereof and the lands over which the same passes, as well as the lands adjacent thereto and affected thereby; that they had estimated the benefits and damages to said lands and caused a tabular statement to be prepared, showing the names of the owners of each tract of land to be benefited or damaged, the number of acres in each tract of land to be benefited or damaged, as well as of all highways so affected, and that the estimated benefits of such work will be $53,328 and the cost of the construction thereof $26,664, including damages.

On November 1, 1920, the county auditor prepared and filed in his office a notice of hearing upon the petition asking for the repair of such ditch, the report of the engineer and of the viewers, and caused the same to be served by publication in the Crookston Times for three consecutive weeks, by posting a copy thereof in three public places in each town affected and by mailing a copy thereof to each of the persons whose lands were affected, so far as their addresses could be ascertained, and to each of the towns affected. The county board met pursuant to such notice, considered the petition, reports of the engineer and the viewers, heard all parties appearing for and against the project, and thereupon made an order granting the prayer of the petition and directing that the work of improvement be made in accordance with the plans and specifications of the engineer on file in the office of the county auditor. Application was then made to the district court for a writ of certiorari, which was granted, and the court upon hearing affirmed the order of the county

board, from which order Frank W. Kolars and the town of Sullivan appealed.

It is conceded that the proceeding initiated by the petition filed with the county board was for the repair of an existing ditch, and was instituted and conducted under the provisions of section 5552, G. S. 1913, as amended by chapter 300, p. 425, Laws of 1915. It is contended on behalf of appellants that the board has no power to widen or deepen an existing ditch in repair proceedings and that the word "repair" was not intended to include deepening or widening an existing ditch.

The decision depends largely upon the construction to be placed upon section 6 of chapter 300 [p. 434], which provides, among other things, that if the repair of any county or judicial ditch is made necessary, or if it shall be necessary to widen, deepen or extend the same in consequence of its not being constructed in the first instance of sufficient capacity to furnish adequate drainage of the lands affected, then the county board shall appoint an engineer, etc. and cause said ditch to be repaired so that it will answer its original purpose. The plans and specifications of the engineer provided for the deepening of the old ditch on an average of something over two feet along almost its entire length, for widening the same to about the same extent and for using the spoil banks for road grading. No additional lands are sought to be drained nor is the course of the ditch to be changed. It is purely a case of the ditch as originally constructed being of insufficient capacity to answer the purpose for which it was established. The case of State v. McGuire, 109 Minn. 88, 122 N. W. 1120, cited by appellants, was decided before the statute under consideration was amended by the enactment of chapter 300. In that case no notice nor opportunity to be heard was given the owners of the lands affected, and the proceedings were held to be void.

The evident purpose of the statute under consideration is to provide a procedure sufficient to enable the parties to remove the obstruction or remedy the difficulty in cases where a public drainage system has become impaired by clogging, or where it was not constructed in the first instance of sufficient capacity to answer its

original purpose, without unnecessary expense or delay. The construction placed upon the act should not be a mere play upon words, but should go to the purpose thereof. The word "repair" as used in the act should be construed, as therein provided, to include and provide for increasing the capacity of the ditch so that it may answer its original purpose. Such a construction is reasonable. For instance, if a 24-inch tile drain laid on a 1/10 grade becomes clogged with sediment on account of its flat grade, and is taken up, the sediment removed and the tile relaid on a 5/10 grade, the carrying capacity of the drain has been increased from 7.8 cubic feet per second to 17.6 cubic feet, or nearly 225 per cent. Can it be said that a new ditch has been constructed or has the old one simply been repaired? The enlargement of an open ditch is not different. It only increases its capacity. Open work furnishes merely an outlet, while tiling drains the land.

The statute uses the word "repair" in two senses. It is used in its ordinary sense in the first paragraph of section 5552 to indicate a keeping of the ditch in serviceable condition. In such case the cost of the repairs is paid out of the fund to the credit of the ditch, or, if the fund is insufficient, there may be an assessment on the basis of the original assessment. It is used in the last paragraph of section 5552 to include the widening, deepening or extension of the ditch when made advisable because of the construction of lateral or additional ditches, or a ditch system, or in consequence of the insufficient capacity of the ditch as originally constructed, in which case the cost is paid by an assessment of benefits. The proceeding below had in view the widening and deepening of the ditch because of the insufficient capacity of the original ditch. The trial court's memorandum makes this plain. The word "repair" is used in the sense stated at the end of section 5552 by the trial court and in this opinion.

It is urged that to authorize the establishment of a drainage system the board must find that it will be of public utility or benefit and will promote the public health. Of course an assessment can legally be made only for improvements which are of general public benefit, but the repair or improvement of an inadequate public drain-

age system so as to render it of sufficient capacity to furnish adequate drainage of the lands sought to be drained, is as much a public benefit as was the original undertaking.

Affirmed.