# FLOYD TAYLOR v. COUNTY OF SHERBURNE.[1]

December 17, 1954.

No. 36,320.

[1]Reported in 67 N. W. (2d) 827.

*Sydney A. Gross,* for appellant.
*Howard S. Wakefield,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from a judgment in the sum of $124.30 in favor of the county of Sherburne against plaintiff, Floyd Taylor, for damages sustained as a result of his obstruction of county ditch No. 3, Sherburne county.

The sole question presented is whether the trial court's conclusions are sustained by the findings which in substance are:

That plaintiff is the owner of 55 acres of lake and swampland of section 21, Blue Hill township, Sherburne county, drained by county ditch No. 3, upon which wild rice grows profusely; that on June 1, 1950, plaintiff and six other landowners, constituting approximately 50 percent of the lands affected, executed and filed with the board of county commissioners a petition for the repair of county ditch No. 3.

That the board thereupon directed the county ditch inspector to ascertain the repairs necessary therein and report to the board with respect thereto; that on July 11, 1950, the inspector reported that repairs for ditch No. 3 were necessary and that the cost thereof would be less than $1,000, and the board thereupon authorized such repairs which were thereafter made on a day-labor basis without formal contract.

That county ditch No. 3 had not been constructed originally in accordance with the plan and profile therefor, but that where it approached and entered Buck Lake it was left some two feet higher and its terminal some distance shorter than called for in such original plan, and that the present repairs had placed it in the exact condition called for in such original plan.

That the cost of such repairs was less than $1,000 but exceeded 10 percent of the original cost of county ditch No. 3; that on several occasions since completion of the repairs plaintiff has obstructed the ditch so that defendant has been compelled to spend $100 in removal of such obstructions.

Based on such findings the court concluded that a writ issue permanently enjoining plaintiff from interfering with the functions of the ditch; and that defendant have judgment for $100 for damages sustained by reason of plaintiff's actions in obstructing the ditch from time to time.

Plaintiff contends that (1) the work performed on the ditch constituted an "improvement" rather than a "repair" and hence procedure therefor should have been under M. S. A. 106.501,[2] governing improvements to existing public ditches, rather than under § 106.471,[3]

---

[2]Section 106.501, subd. 1. "Before any public drainage system theretofore established and constructed shall be improved by tiling, enlarging or extending, the following procedure shall be observed. * * *

"* * * The petition shall designate the drainage system proposed to be improved by number or other description sufficient to identify the same and set forth that the ditch is of insufficient capacity or needs enlarging or extending so as to furnish sufficient capacity or a better outlet; with a description of the starting point, general course and terminus of any extension, and that the proposed improvement will be of public utility and promote the public health. The petition shall contain an agreement by the petitioners that they will pay all costs and expenses which may be incurred in case the proceedings are dismissed."

Subd. 2. "Upon the filing of such petition and a bond as provided by section 106.041, it shall be the duty of the auditor, in the case of a drainage system lying wholly within the county, to present the same to the county board at its next meeting, * * *."

[3]Section 106.471, subd. 2(b). "If the board finds that the estimated cost of such repairs will be less than $1,000, it may have such work done by day labor without advertising for bids or entering into a contract therefor. The county board is limited in the expenditure of money therefor as herein provided. In one calendar year the board shall not spend or contract to be spent for repairs or maintenance on one ditch system a sum greater than ten per cent of the cost of construction thereof in that county, except as provided in subdivision 4."

Subd. 4(b). "Upon the filing of the engineer's report, notice of hearing thereon shall be given as required by section 106.101."

relating to repairs thereto; and (2) the court's finding that repair costs exceeded 10 percent of the original cost of ditch No. 3 compelled a conclusion that the board had no jurisdiction to make its order of July 11, 1950, under § 106.471, subd. 2(b).

■ We are of the opinion that the work described constituted a "repair" as contemplated by § 106.471, subd. 2(b), rather than an "improvement" governed by § 106.501. Section 106.471 specifies the procedure to be followed where work becomes necessary to "maintain" the ditch or to "restore" "a ditch system" to the "same condition as when originally constructed." Under this section the county board is empowered to authorize such work with or without a petition, and no notice, hearing, or formal contract therefor is required if the cost of such a repair project does not exceed $1,000. Thereunder, the board may not expend for such work in any one calendar year, a sum in excess of 10 percent of the original cost of the ditch, except as provided under § 106.471, subd. 4, requiring notice and hearing.

Section 106.501, which governs "improvements" to public drainage systems by tiling, enlargement, or extension, gives recognition to the fact that additional lands may be benefited or damaged thereby and makes provision for notice, hearing, and assessment by reason thereof. It directs that a petition for such improvement contain an agreement accompanied by a bond conditioned that petitioners pay preliminary costs and expenses incurred should the petition be dismissed.

■ In the present proceeding it is clear that plaintiff and other petitioners understood that the work requested was a repair project governed by § 196.471, subd. 2(b). Their "Petition for Repair" states directly that the drainage system covered by county ditch No. 3 "is out of repair, is insufficient in size, needs cleaning out and deepening." There was no agreement therein to pay expenses if the petition were dismissed. No bond accompanied it. The estimate for repair costs then made was less than $1,000. Nothing was submitted to indicate that such repairs would require expenditures in excess of 10 percent of the original cost during that calendar year or other-

wise. Clearly, under § 106.471, subd. 2(b), at this stage of the proceedings, the board had jurisdiction to authorize the work without further notice, hearing, or formal contract.

■ The work subsequently performed under the board's order did not change or alter the ditch channel or damage lands not compensated for at the time the original plan therefor was authorized. It merely restored ditch No. 3 to its original design. Under similar statutes (G. S. 1913, § 5552, as amended by L. 1915, c. 300, § 6), this court has held that a "repair" may extend to widening and deepening an existing drainage system (County of Brown v. Martinsen, 153 Minn. 268, 190 N. W. 255) and even to increasing the capacity of a ditch so that it may answer its original purpose, providing no lands other than those affected by the original proceeding are involved. State ex rel. Kolars v. County Board of Polk County, 151 Minn. 274, 186 N. W. 709.

■ It seems clear that in the present proceedings plaintiff is estopped to challenge the jurisdiction which he invoked and the work performed thereunder with his full knowledge and consent. The discovery, after the work's completion, that its cost exceeded the 10 percent of original cost limitation, fixed by § 106.471, subd. 2(b), would not, at least in the absence of a showing that the excess was substantial, subject the proceedings to collateral attack such as is here attempted. See, State v. Radke, 161 Minn. 416, 201 N. W. 613; County of Martin v. Kampert, 129 Minn. 151, 151 N. W. 897. A different result might obtain if a substantial deviation from the petition had occurred. See, Johnson v. County of Steele, 240 Minn. 154, 60 N. W. (2d) 32; Jurries v. Virgens, 104 Minn. 71, 116 N. W. 109. We hold the findings adequately support the conclusions and that the judgment must be affirmed.

Affirmed.