IN RE PETITION OF CARROLL SWENSON AND OTHERS v. COUNTY OF NORMAN.

210 N. W. 2d 242.

August 24, 1973—No. 43936.

*Lamb, Schaefer & McNair* and *Michael D. McNair,* for appellants.

*Warren Spannaus,* Attorney General, *William Peterson,* Special Assistant Attorney General, and *Oliver E. Austinson,* County Attorney, for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Gillespie, JJ.

Per Curiam.

This is an appeal from a district court judgment entered on the order of the trial court dismissing objections, made pursuant to Minn. St. c. 278, of a number of landowners to an assessment for the repair of Norman County Ditch No. 6. Objectors challenge the assessment on two main grounds: First, that the work performed on the ditch constituted an improvement, not a repair, and that therefore the county board should have followed procedures provided by Minn. St. 106.501, dealing with improve-

ments, rather than procedures provided by § 106.471, dealing with repairs; and second, that in any event the county board did not follow all the statutory procedures provided for repairs. We affirm.

In September 1968 a number of landowners, including some of the present objectors, petitioned pursuant to Minn. St. 1969, § 106.471, subd. 4, for repairs to Norman County Ditch No. 6, which had been constructed in 1903. Following receipt of this petition, the chairman of the county board visited parts of the ditch, concluded that the ditch indeed was in need of repair, and so reported to the board. Thereafter under authority conferred by § 106.471, subd. 2, the board adopted a resolution to undertake repair of the ditch and instructed a group of the petitioners, headed by one Dennis Lindberg, to appoint a committee of three to undertake the repair work provided it did not exceed a cost of $10,000 per year.[1] Acting on behalf of the board and with the belief that he had authority to do so, Lindberg, in the summer of 1970, contacted several people, including an engineer who was to lay out and stake the course of the project, and two other men, who were to operate the draglines and bulldozers on the project. On August 3, 1970, the engineer met with approximately 30 affected landowners, including many of the present objectors, and reviewed his plans for the repair and answered questions. Those in attendance made no objections to the plans. Thereafter the engineer completed the staking of the ditch and the planned work was performed.

1. There is no merit to objectors' argument that the work performed on the ditch constituted an improvement and not a repair. Minn. St. 106.471, subd. 1, defines "repair" as used in that section as—

---

[1] Although at the time the board took this action, Minn. St. 1967, § 106.471, subd. 2, authorized a cost of $5,000 per year, the chairman of the county board testified it authorized an expenditure of not more than $10,000 in one year. Section 106.471, subd. 2, was amended, effective May 12, 1969, to provide the larger amount. L. 1969, c. 374, § 2.

"* * * restoring a ditch system or any part thereof as nearly as practicable to the same condition as when originally constructed or subsequently improved, including resloping of open ditches and leveling of waste banks thereon if deemed essential to prevent further deterioration * * *."

Minn. St. 106.501, dealing with improvements, refers to "tiling, enlarging or extending" of county ditch systems. We believe that the evidence, which we see no point in detailing here, adequately supports the trial court's findings and conclusion that the work performed in this case constituted a repair and not an improvement.

2. Objectors also contend that in any event the county board did not follow the statutory procedures provided for repairs. Objectors cite three alleged procedural defects:

(a) The county board shifted from a proceeding under § 106.471, subd. 4 (repairs instituted by petition), to one under subd. 2 (repairs by authority of the county board).

(b) The chairman, after inspecting the ditch, failed to reduce to writing, as required by subd. 2, his conclusion that the ditch needed repairs.

(c) The board failed to make an estimate that the proposed repair would not exceed a cost of $10,000 per year, as required by subd. 2.

We conclude that the first alleged procedural defect was not a defect at all and that the other two defects were not of sufficient magnitude to justify any relief to objectors at this late date, the ditch having already been repaired and the money already spent by the county.

(a) If, as objectors contend, the board was limited to proceeding under Minn. St. 1969, § 106.471, subd. 4, it would have had to publish notice, appoint an engineer, and conduct administrative hearings. On the other hand, if the board could proceed under subd. 2, then it could investigate and order repairs on its own motion, holding hearings without publishing notice, and have the repair work performed by hired labor without first ad-

vertising for bids or engaging an engineer. We believe that our decision in Taylor v. County of Sherburne, 243 Minn. 303, 306, 67 N. W. 2d 827, 829 (1954), in which we stated specifically that the board could proceed under subd. 2 "with or without a petition" for repairs, answers the objectors' contention that the county board was limited to proceeding under subd. 4 simply because there was a repair petition pending.

(b-c) The other allegations of procedural defects are less easily dismissed. There is no dispute that the chairman of the county board, acting as ditch inspector, did not submit his recommendation to the board in writing or that the county board did not make a formal estimate that the cost of the repairs authorized for that year would not exceed $10,000. In this respect it is clear that the county board did not strictly adhere to all the provisions of subd. 2. Although we believe that a county board should pay close attention to statutory requirements in these repair proceedings, and although the county board's failure in this respect in the instant case might well have been of sufficient magnitude to have justified a court in providing a remedy had objectors acted before the repair work was commenced, we do not believe that the board's procedural deviations would at this stage, when the repair work has been completed and the money spent, justify this court in overturning the entire assessment.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.