A.R. MINCH, Appellant,

v.

BUFFALO–RED RIVER WA-
TERSHED DISTRICT,
Respondent.

No. A05–2339.

Court of Appeals of Minnesota.

Nov. 7, 2006.

Roger J. Minch, Serkland Law Firm, Fargo, ND, for appellant.

Tami L. Norgard, Vogel Law Firm, Fargo, ND, for respondent.

Considered and decided by ROSS, Presiding Judge; DIETZEN, Judge; and CRIPPEN, Judge.*

## OPINION

DIETZEN, Judge.

Appellant A.R. Minch appeals from summary judgment dismissing his claims for injunctive relief and affirming respondent Buffalo–Red River Watershed District's order requiring Minch to clean and maintain a public right-of-way ditch on his property, arguing that (1) the watershed district lacked statutory authority to order him to clean a public right-of-way ditch; (2) its order violated his right to procedural due process of law; (3) its order was an unconstitutional taking of his property; (4) its order was unconstitutionally void for vagueness; and (5) he was denied equal protection of the law. Because a watershed district lacks authority under chapter 103D of the Minnesota Statutes to order a landowner to clean a private ditch subject to the watershed district's public right-of-way easement, we reverse. But because neither the watershed district nor the district court determined whether cleaning and removing the siltation in the ditch was an "obstruction" within the meaning of Minn.Stat. § 103E.075 (2004) or a "repair" under Minn.Stat. § 103E.701 (2004), we remand for further proceedings consistent with this decision.

## FACTS

Before his death, appellant A.R. Minch owned certain real property located in Section 34, Kragnes Township, Clay County, Minnesota. Bordering Minch's property to the north is County State Aid Highway (CSAH) No. 5, to the east is Section 35 and property owned by the Brendemuhl family, and to the west is Ditch No. 51, which runs in a north-south direction, beginning at the northwest corner of Minch's property.

Located along the entire north end of Minch's property and within the right-of-way of CSAH No. 5, is a private ditch in which the watershed district has a public right-of-way easement. The ditch is known as the Section 34 ditch, and conveys surface water from neighboring properties as part of the watershed district's overall drainage plan for the area. The ditch has existed at least since CSAH No. 5 was constructed in the 1950s, which is before Minch acquired the property. Clay County once maintained the Section 34 ditch, but authority over the ditch was transferred to respondent Buffalo–Red River Watershed District ("watershed district") in accordance with Minn.Stat. § 103D.625, subd. 1. The Buffalo–Red River Watershed District exists and is organized pursuant to Minn.Stat. § 103D.101, subd. 1 (2004).

In 2002, Minch petitioned the watershed district for an improvement project to Ditch No. 51 to improve drainage around his property and Kragnes Township. When the watershed district approved and constructed the project, it concluded that the Section 34 ditch would receive increased drainage from neighboring properties, particularly to the east. As a result, the watershed district assessed benefited landowners, like the Brendemuhls, for the cost of the project.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

Shortly after, a dispute arose among Minch, the Brendemuhls, Clay County, and the watershed district regarding the responsibility for removing soil, sediment, and silt that had filled in portions of the Section 34 ditch. Minch applied for a permit to clean the westerly 80% of the ditch, which was located on his property, but he refused to clean the remainder of the ditch unless he received drainage concessions from the Brendemuhls to the east. Because the watershed district wanted the whole length of the Section 34 ditch cleaned, it recommended to the county that it refuse to issue the permit.

At the October 25, 2004 watershed district board meeting, Wayne Brendemuhl petitioned the watershed district to require Minch to remove the soil and silt obstruction along the entire length of the Section 34 ditch. Minch was not present at the meeting. Board members expressed concern that cleaning the Section 34 ditch required access and the use of equipment on Minch's property located on the south side of the ditch. Therefore, the board voted to have its attorney provide legal advice regarding the board's options for cleaning the ditch.

At the November 22, 2004 watershed district board meeting, which Minch and his attorney attended, the watershed district's attorney informed the watershed district that to clean the ditch it had the option of acquiring by condemnation the rights to Minch's property on the south side of the ditch. Alternatively, it could issue an order directing Minch to clean the entire ditch. Board managers noted that the watershed district had issued orders to other property owners to clean ditches on their property.

Minch argued that the watershed district lacked the authority to require him to clean the ditch, that the watershed district failed to give proper notice of the meeting, and that an order requiring him to clean the entire ditch would amount to a taking. But the watershed district concluded that cleaning the Section 34 ditch was consistent with its drainage plan and that it was important that the ditch not be obstructed for the benefit of the neighboring property owners to the east, who were assessed for the benefit of using the Section 34 ditch. The watershed district then approved a motion to order Minch to clean the Section 34 ditch by December 13, 2004. Minch argued that he was being singled out for unfair treatment, but the watershed district stated that it had been unsuccessfully trying to resolve the issue for almost a year and needed to move on to other problems.

In January 2005, Minch brought a declaratory-judgment action, challenging the watershed district's authority to require him to clean the Section 34 ditch. The watershed district moved for summary judgment. In a September 23, 2005 order, the district court granted the watershed district's motion and directed Minch to clean the ditch according to specifications issued by the Clay County engineer. On October 14, a judgment was entered dismissing the action and awarding costs to the watershed district.

The watershed district brought a motion to have Minch found in contempt for failure to comply with the September 23 order. In an order filed on December 1, 2005, the district court declined to hold Minch in contempt but authorized the watershed district to clean the ditch. The ditch was subsequently cleaned and costs were assessed to Minch. This appeal follows.

## ISSUES

1. Does a watershed district have authority under chapter 103D of the Minnesota Statutes to order a private landowner to

clean a private ditch with a public right-of-way easement?

2. Does chapter 103E of the Minnesota Statutes allow a watershed district to order the removal of obstructions in drainage ditches under its jurisdiction?

3. Did the watershed district violate Minch's right to procedural due process when it failed to provide him adequate notice of a hearing to argue why he should not be required to clean the ditch?

4. Did the district court order requiring Minch to clean and maintain the ditch result in a taking of his property, and is it unconstitutionally void for vagueness?

## ANALYSIS

### I.

█ Minch argues that the watershed district lacks authority under chapter 103D to order him to clean and maintain its public right-of-way to convey surface water through the Section 34 ditch. We agree.

The interpretation of a statute is a question of law, which we review de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). When interpreting a statute, we give each word its plain and ordinary meaning. *State v. Larivee*, 656 N.W.2d 226, 229 (Minn.2003); *see also* Minn.Stat. § 645.08(1) (2004) (mandating that words and phrases be construed according to their common and approved usage).

█ Chapter 103D of the Minnesota Statutes governs the administrative powers and operations of watershed districts, while chapter 103E governs the proceedings by which new drainage systems are constructed and existing ditches are maintained by drainage authorities such as county boards or watershed districts. *See* Minn.Stat. 103D.625, subd. 3; *In re*

*Comm'rs Order Denying Permit Application 93–1024*, 527 N.W.2d 173, 175 (Minn. App.1995) (stating that "[c]hapter 103D delineates powers and procedures pertaining to watershed districts generally, while chapter 103E lays out supplemental powers and procedures applicable to drainage authorities"), *review denied* (Minn. Apr. 27, 1995). Because chapters 103D and 103E are part of the "Minnesota Water Law" and govern similar subject matter, they should be read *in pari materia. See Hagen v. Martin County*, 253 Minn. 367, 371, 91 N.W.2d 657, 660 (1958) (concluding that the various chapters of the Minnesota Water Law should be construed together); *see also State v. McKown*, 475 N.W.2d 63 (Minn.1991) ("Statutes *in pari materia* are those relating to the same person or thing or having a common purpose.").

█ Chapter 103D provides that a watershed district may be created specifically "to repair, improve, relocate, modify, consolidate, and abandon all or part of drainage systems within a watershed district" and "to control or alleviate soil erosion and siltation of watercourses or water basins." Minn.Stat. § 103D.201, subd. 2(9), (10) (2004). Chapter 103D also gives watershed districts specific and general powers. Watershed districts have the specific power to "construct, clean, repair, alter, abandon, consolidate, reclaim, or change the course or terminus of any public ditch, drain, sewer, river, watercourse, natural or artificial, within the watershed district." Minn.Stat. § 103D.335, subd. 8 (2004). And watershed districts have the general power of eminent domain and to perform all acts "necessary and proper for the watershed district to carry out and exercise the powers expressly vested in it." Minn. Stat. § 103D.335, subd. 1(4), (5) (2004). But watershed districts lack general police powers and must therefore achieve their purposes through an enumerated power.

*In re 1994 and 1995 Shoreline Improvement Contractor Licenses of Landview Landscaping, Inc.,* 546 N.W.2d 747, 750 (Minn.App.1996), *review denied* (Minn. June 11, 1996); *see also Johnson v. Steele County,* 240 Minn. 154, 160, 60 N.W.2d 32, 37 (1953) ("Statutory drainage proceedings invoke the power of eminent domain.").

The parties do not dispute that the watershed district has a public right-of-way easement to convey surface water generated by neighboring properties to the east through Minch's private ditch as part of its overall watershed management plan. But Minch correctly argues that the watershed district lacks the authority under chapter 103D to order him to clean and maintain his private ditch.

Although chapter 103D gives the watershed district the authority to clean Minch's ditch, we find nothing in the chapter expressly authorizing the watershed district to order Minch to clean and maintain his ditch for the benefit of the watershed district. And we do not construe chapter 103D to implicitly authorize the watershed district to require private landowners to clean and maintain a ditch for the watershed district's benefit. To construe chapter 103D to confer on a watershed district implicit authority to order private landowners to clean and maintain a ditch, would contravene the legislature's apparent decision not to grant such authority. *See, e.g., State by Spannaus v. Lloyd A. Fry Roofing Co.,* 310 Minn. 528, 534 n. 6, 246 N.W.2d 696, 700 n. 6 (1976) (stating that courts cannot construe statutes to confer upon agencies implicit authority, when to do so would contravene the apparent intent of the legislature). If the legislature had intended to grant watershed districts that authority in chapter 103D, it could have done so explicitly.

Further, Minn.Stat. § 103E.075 (2004) explicitly gives a drainage authority the power to order a private landowner to remove an obstruction in a drainage ditch. Because legislative intent is presumed to be articulated in the plain language of a statute, we discern no legislative intent to convey such authority in chapter 103D, and clear legislative intent to do so in chapter 103E. *See, e.g., State v. Iverson,* 664 N.W.2d 346, 350–51 (Minn.2003) (stating that the best method of determining legislative intent is by relying on a statute's plain meaning).

The watershed district cites *Krahl v. Nine Mile Creek Watershed District,* 283 N.W.2d 538, 542 (Minn.1979), for the proposition that it has implied authority to take all necessary and proper action to regulate problems of water use. In *Krahl,* the court held that the watershed district had the implied authority to enact floodplain regulations, reasoning that one of the watershed district's primary purposes was to provide relief from flooding. *Id.* The watershed district argues that, like the watershed district in *Krahl,* it has the implied authority to order the removal of the siltation, which is one of its primary purposes.

But in *Krahl* there was no separate statute setting forth procedures for cleaning and maintaining drainage systems as there is here. *See* Minn.Stat. § 103D.625, subd. 3 (noting that the provisions of the Drainage Law (103E) are incorporated into the Watershed Law (103D) and govern ditch construction and maintenance issues). Because chapter 103E explicitly authorizes the watershed district to order a private landowner in certain circumstances to remove an obstruction in the drainage system, *Krahl* is distinguished from the present case. We thus conclude that the watershed district lacks authority under Minnesota Statutes chapter 103D to order Minch, a private landowner, to clean a private ditch with a public right-of-way easement.

## II.

Minch next argues that chapter 103E does not apply to the watershed district's public right-of-way easement because the ditch in question is not a "drainage system." We disagree.

### A. *The watershed district is a drainage authority under chapter 103E*

■ The district court concluded that the Section 34 ditch was not part of a "drainage system" within the meaning of chapter 103E, reasoning that it was not "established *and* constructed by a drainage authority." We conclude otherwise. Chapter 103E establishes the rules by which drainage authorities build and maintain public drainage systems. *Marshall County v. State, Dep't of Natural Res.*, 636 N.W.2d 570, 574 (Minn.App.2001). Minn. Stat. § 103E.005, subd. 12 (2004), defines a "drainage system" as "a system of ditch or tile, or both, to drain property, including laterals, improvements, and improvements of outlets, established and constructed by a drainage authority." A drainage authority means "the board or joint county drainage authority having jurisdiction over a drainage system or project." Minn.Stat. § 103E.005, subd. 9 (2004). Minn.Stat. § 103D.625, subd. 1 (2004) provides a procedure for a watershed district to take over the work of a drainage authority, including the right to repair and maintain the drainage system.

Here, the Buffalo–Red River Watershed District acquired jurisdiction over the county drainage system with the promulgation of the watershed district rules, but the exact date is unclear from the record. Its jurisdiction is undisputed by the parties. Thus, the watershed district is a drainage authority under chapter 103E, and its drainage activities are governed by that statute. We turn to an analysis of whether the watershed district has author-ity under chapter 103E to order Minch to clean and maintain the ditch.

### B. *The watershed district may order the removal of obstructions under Minn.Stat. § 103E.075*

Chapter 103E explicitly authorizes the watershed district to clean the siltation present in the Section 34 ditch. First, the watershed district has the authority to determine that a drainage system has been obstructed. Minn.Stat. § 103E.075 (2004) provides:

**Subd. 1. Notification to responsible party.** If the board determines that a drainage system has been obstructed, including by the installation of bridges and culverts of insufficient hydraulic capacity, the board shall notify the person or public authority responsible for the obstruction as soon as possible and direct the responsible party to remove the obstruction or show the board why the obstruction should not be removed. The board must set a time and location in the notice for the responsible person to appear before the board.

**Subd. 2. Obstruction on private property.** If the obstruction is on private property, the owner is responsible for the obstruction unless the owner proves otherwise. The owner must be notified by certified mail at least ten days before the hearing.

When a watershed district determines that an obstruction exists within the meaning of Minn.Stat. § 103E.075, it has the authority to order a responsible person to remove the obstruction at that person's expense. If the responsible person refuses, the watershed district can file a lien against the property for the cost of removing the obstruction. Minn.Stat. § 103E.075, subd. 3.

■ But the statute does not define the term "obstruction." When interpreting a statute, we give words their plain and ordi-

nary meaning. Minn.Stat. § 645.08(1). The term "obstruct" means "to block or fill (a passage) with obstacles or an obstacle." *The American Heritage Dictionary of the English Language* 1214 (4th ed.2000). Under the principle of *noscitur a sociis,* a term that is capable of several meanings is defined by the words with which the term is associated. *Wayne v. MasterShield, Inc.,* 597 N.W.2d 917, 920 (Minn.App.1999), (citing *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961)), *review denied* (Minn. Oct. 21, 1999); *see also State v. Suess,* 236 Minn. 174, 182, 52 N.W.2d 409, 415 (1952) (stating "the meaning of doubtful words in a legislative act may be determined by reference to their association with other associated words and phrases").

Here, the statute lists "the installation of bridges and culverts of insufficient hydraulic capacity" as types of obstructions covered by the subdivision. Thus, the words with which the term "obstruction" is associated involve an obstruction that is artificial in nature or man-made, like a bridge or culvert, that is constructed or installed in a relatively short period of time, and that permits the identification of the responsible party, rather than an obstruction that occurs naturally or gradually over a long period of time.

■ Based on the definition of the word "obstruct," and the examples of obstructions set forth in the statute, we conclude that the legislature intended to limit the type of obstructions the responsible party can be ordered to remove to obstacles that are artificial in nature or man-made, that are constructed or installed, and that block or impede the normal flow of the drainage system. We do not discern a legislative intent to extend the scope of this particular subdivision to obstructions that occur naturally or gradually over a long period of time.

### C. *A watershed district may make repairs under Minn.Stat. § 103E.705*

Additionally, Minn.Stat. § 103E.705 (2004) sets forth the procedure for a watershed district to inspect a drainage system and make necessary repairs. Under chapter 103E, "repair" means:

[T]o restore all or a part of a drainage system as nearly as practicable to the same condition as originally constructed and subsequently improved, including resloping of ditches and leveling of waste banks if necessary to prevent further deterioration, realignment to original construction if necessary to restore the effectiveness of the drainage system, and routine operations that may be required to remove obstructions and maintain the efficiency of the drainage system.

Minn.Stat. § 103E.701, subd. 1 (2004).

■ The term "repair" is thus defined in terms of its purpose, namely, to restore the "effectiveness of a drainage system," and includes routine operations necessary "to remove obstructions and maintain the efficiency of a drainage system." Because the removal of the natural accumulation of silt in a ditch as a result of erosion or drainage may be necessary to restore the effectiveness and efficiency of a drainage system, the removal of silt may amount to a "repair" within the meaning of Minn. Stat. § 103E.705. *See, e.g., McLeod County Bd. of Comm'rs v. State, Dep't. of Natural Res.,* 549 N.W.2d 630, 633 (Minn.App.1996) (holding that because affected landowners had a property right to have a drainage ditch maintained, the drainage authority must undertake maintenance), *review denied* (Minn. Aug. 20, 1996); *see also In re Judicial Ditch No. 2,* 219 Minn. 255, 17 N.W.2d 499 (1945) (holding that landowners affected by a ditch system obstructed by soil and vegetation had a right to have

it "repaired" by county drainage authority with the costs assessed to all affected landowners).

In summary, chapter 103E sets forth a statutory procedure for a watershed district to determine the existence of a specific type of obstruction, which the responsible party is obligated to remove at its expense under Minn.Stat. § 103E.075, and a repair procedure under Minn.Stat. § 103E.705 to remove any type of obstruction at the expense of the watershed district, but subject to the right of the watershed district to assess the costs of repair to the landowners who benefit from the repair. The watershed district thus has general authority under Minn.Stat. § 103E.705 to remove any obstruction from a drainage system and limited authority under Minn.Stat. § 103E.075 to order a responsible party to remove specific types of obstructions at that person's expense. Our construction of the relevant statutes gives effect to the provisions of Minn.Stat. § 103E.075 and Minn.Stat. § 103E.705, and does not render either superfluous. *See* Minn.Stat. § 645.16 (2004) ("Every law shall be construed, if possible, to give effect to all its provisions.").

█ Here, neither the watershed district nor the district court determined whether the siltation obstruction in the Section 34 ditch constituted an obstruction within the meaning of Minn.Stat. § 103E.075. Without that determination, we are unable to review the resulting decision on appeal. Consequently, we reverse the district court's determination that the watershed district has the authority to order a private landowner to clean the ditch under chapter 103D, and remand for further proceedings to determine whether the siltation in the Section 34 ditch constitutes an obstruction under Minn.Stat. § 103E.075. The district court may reopen the record to conduct evidentiary hearings, which may include remanding to the watershed district to make the initial determination of whether the siltation constituted an obstruction within the meaning of Minn.Stat. § 103E.075.

## III.

█ Minch argues that the watershed district did not afford him procedural due process when it ordered him to clean the Section 34 ditch. Specifically, Minch claims that the watershed district failed to provide him adequate notice of a hearing where he could have argued why he should not be required to clean the ditch. In general, property interests in a ditch system must not be infringed without due process of law. *State by Humphrey v. Byers*, 545 N.W.2d 669, 672 (Minn.App. 1996). And statutory provisions governing ditch proceedings must be strictly followed. *State v. Oldre*, 179 Minn. 566, 569, 229 N.W. 878, 879 (1930).

Minn.Stat. § 103E.075, subd. 1, requires the watershed district board to notify the party responsible for an obstruction and to direct that party to remove the obstruction or show the board why the obstruction should not be removed. The notice must contain a time and location for the responsible person to appear before the board. *Id.* If the obstruction is on private property, notice is required at least ten days before a hearing. *Id.*, subd. 2. Minn.Stat. § 103E.705, by contrast, does not require watershed districts to notify affected landowners before providing the repairs necessary to make a drainage system efficient, unless the repair is requested by third party petition pursuant to Minn.Stat. § 103E.715 (2004). *See* Minn.Stat. § 103E.705 (outlining the drainage authority's repair procedure when not conducted pursuant to third-party petition); *Swenson v. County of Norman*, 297 Minn. 208, 210–

11, 210 N.W.2d 242, N.W.2d 242, 244 (1973) (noting that the ditch-repair statute allows the drainage authority to make repairs on its own and hold hearings without notice); *see also State, Dep't of Natural Res. v. Kandiyohi County (In re Petition of Zimmer)*, 359 N.W.2d 266, 270 (Minn. 1984) ("The procedure for repairing a ditch is much less involved than either the procedure for establishing a ditch or the procedure for improving one.").

■ Here, the watershed district's board did not send Minch a notice of the November 22, 2004 board meeting describing the scope of the hearing and providing him the opportunity to be heard. The watershed district contends that because Minch attended almost every watershed district meeting, and had discussed cleaning the ditch with the board for almost a year, he was afforded a hearing and its failure to send a written notice constituted harmless error. We disagree. The watershed district failed to notify appellant of the scope of the hearing, namely, whether it was proceeding under chapter 103D, Minn.Stat. § 103E.075, or Minn.Stat. § 103E.705. But because we reverse and remand for further proceedings to determine whether siltation constitutes an "obstruction" under Minn.Stat. § 103E.075, appellant's procedural due process claim is moot. On remand, should the watershed district intend to proceed under Minn.Stat. § 103E.075, it must provide appellant with the notice the statute requires.

### IV.

Minch argues that the district court order requiring him to clean and maintain the ditch results in a taking of his property and is unconstitutionally void for vagueness. Because we reverse and remand the case for further proceedings, we need not reach these issues and, therefore, we decline to do so.

Minch also argues that he was unfairly singled out by the watershed district for unfair treatment in violation of his right to equal protection of the laws. Specifically, he argues that the watershed district selectively enforced its rules and singled him out to bear the cost of alleviating the watershed district's drainage problems. But because he did not adequately brief the issue, he waived consideration of the issue on appeal. *See Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn.1982) (holding that issues not briefed on appeal are waived).

### V.

■ Minch and the watershed district each made cross-motions to strike portions of each other's briefs. The watershed district argues that Minch supplemented his brief with irrelevant information that was not part of the district court record. Minch claims the watershed district mischaracterized the facts of the case. Because we reverse and remand for further proceedings, the motions to strike are moot and are, therefore, denied. *See, e.g., State v. Johnson,* 659 N.W.2d 819, 822 (Minn.App.2003) (stating that when the holding of the case has rendered the motion to strike moot, the motion is denied), *review denied* (Minn. July 15, 2003).

### DECISION

Because a watershed district lacks authority under chapter 103D of the Minnesota Statutes to order a landowner to clean a private ditch subject to the watershed district's public right-of-way easement, we reverse. But a watershed district has the authority to determine whether a blockage of its easement constitutes an obstruction within the meaning of Minn.Stat. § 103E.075 (2004) that a landowner may be obligated to remove. Because neither the watershed district nor the district court concluded whether the siltation was

an "obstruction" within the meaning of Minn.Stat. § 103E.075, we remand for further proceedings consistent with this decision. The district court may reopen the record to conduct evidentiary hearings, which may include remanding to the watershed district to make the initial determination of whether the siltation constituted an obstruction under Minn.Stat. § 103E.075.

**Reversed and remanded; motions denied.**